IN THE COURT OF COMMON PLEAS OF CLEARFIELD COUNTY, PA
CIVIL DIVISION

| | | |
|---|---|---|
| BIG DOG ENERGY, LLC, | ) | No. 2022-1464-CD |
| | ) | |
| Plaintiffs, | ) | TYPE OF PLEADING: |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| EZ BLOCKCHAIN, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | *FILED ON BEHALF OF:* |
| | ) | |
| | ) | Big Dog Energy, LLC |
| | ) | |
| **NOTICE TO PLEAD** | ) | *COUNSEL OF RECORD:* |
| | ) | |
| To:  EZ Blockchain, LLC | ) | Thomas C. Ryan (Pa. ID 92482) |
| | ) | thomas.ryan@klgates.com |
| You are hereby notified to file a written | ) | Amanda R. Cashman (Pa. ID 306843) |
| response to the enclosed Complaint within | ) | amanda.cashman@klgates.com |
| twenty (20) days from service hereof or a | ) | Ryan W. Steyer (Pa. ID 328009) |
| judgment may be entered against you. | ) | ryan.steyer@klgates.com |
| | ) | K&L Gates LLP |
| By: _____ | ) | K&L Gates Center |
| | ) | 210 Sixth Avenue |
| **JURY TRIAL DEMANDED** | ) | Pittsburgh, PA 15222 |
| | ) | |
| | ) | Telephone:  (412) 355-6500 |
| | ) | Facsimile:  (412) 355-6501 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

I hereby certify this to be a true
and attested copy of the original
statement filed in this case.

NOV 14 2022

A TRUE COPY
ATTEST: _____
PROTHONOTARY-CLERK

IN THE COURT OF COMMON PLEAS OF CLEARFIELD COUNTY, PA
CIVIL DIVISION

| | | |
|---|---|---|
| BIG DOG ENERGY, LLC, | ) | |
| | ) | No. 2022- |
| Plaintiffs, | ) | |
| | ) | **COMPLAINT** |
| v. | ) | |
| | ) | |
| EZ BLOCKCHAIN, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

COURT ADMINISTRATOR
Clearfield County Courthouse
230 East Market Street
Clearfield, PA 16830
(814) 765-2641 ext. 5010

## IN THE COURT OF COMMON PLEAS OF CLEARFIELD COUNTY, PA
## CIVIL DIVISION

| | |
|---|---|
| BIG DOG ENERGY, LLC, | ) |
| | ) No. 2022- |
| Plaintiffs, | ) |
| | ) **COMPLAINT** |
| v. | ) |
| | ) |
| EZ BLOCKCHAIN, LLC, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

AND NOW COMES Plaintiffs Big Dog Energy, LLC ("Big Dog"), by and through its undersigned counsel, and respectfully files this Complaint and, in support thereof, avers as follows:

### NATURE OF THE CASE

1.      This case involves a simple breach of contract after Defendant EZ Blockchain, LLC ("Defendant") failed to pay for services rendered by Big Dog.

### PARTIES

2.      Plaintiff Big Dog Energy, LLC is a Pennsylvania limited liability company with its principal place of business at 104 Bradford Road, Wexford, PA 15090, engaged in the exploration, development and production of natural gas in the Commonwealth of Pennsylvania.

3.      Defendant EZ Blockchain, LLC, is a Delaware limited liability company with its principal place of business at 833 W. Chicago Ave., Ste 401, Chicago, IL 60642, engaged in digital asset mining in several locations, including but not limited to, the Commonwealth of Pennsylvania.

### JURISDICTION AND VENUE

4.      This action arises under the laws of the Commonwealth of Pennsylvania and is within the subject matter jurisdiction of this Court pursuant to, *inter alia*, 42 Pa. Cons. Stat. § 931.

5.      Venue is proper pursuant to Pennsylvania Rule of Civil Procedure 1006(a)(1).

## FACTUAL BACKGROUND

6.      In or about July 2021, Defendant and Big Dog entered into certain agreements for the purposes of establishing mobile data mining operations at a well owned by Big Dog in Clearfield County, Pennsylvania (the "Well").

7.      On or about July 12, 2021, Defendant and Big Dog executed a sales agreement, dated July 21, 2021, (the "Sales Agreement"), which provided that:

      a.   Big Dog would make available for sale and Defendant would purchase certain quantities of natural gas to power the mobile data mining operations;

      b.   Big Dog would provide space at the Well to allow Defendant to operate mobile data centers;

      c.   Defendant would be solely responsible for constructing, installing, maintaining, and operating the mobile data centers;

      d.   Big Dog would provide Defendant with invoices on a monthly basis;

      e.   Defendant would pay all invoices within thirty (30) days of the date of the invoice;

      f.   Either party would have the right to terminate the Sales Agreement: (i) at any time upon ninety (90) days written notice, or (ii) upon thirty (30) days written notice in the event of a material breach; and

      g.   Upon termination, Defendant would pay all sums due and owing.

*See* Sales Agreement, a true and correct copy of which is attached hereto as Exhibit A.

8.      Although the Sales Agreement provided that Defendant would be solely responsible for constructing, installing, maintaining, and operating the mobile data centers, Defendant required assistance in performing these function.

2

9.      Accordingly, on or about July 21, 2021, Defendant and Big Dog entered into a supplemental oral agreement for certain services (the "Services Agreement"), whereby (i) Big Dog agreed to perform various services and incur various costs on behalf of Defendant related to constructing, installing, maintaining, and operating the mobile data centers, (ii) Defendant agreed to pay for such services and costs incurred by Big Dog. The Services Agreement was reflected in an e-mail, a true and correct copy of which is attached hereto as Exhibit B.

10.     After entering into the Services Agreement on or about July 21, 2021, Big Dog began performing the services and incurring costs on behalf of Defendant.

11.     In or about August 2021, Big Dog began sending invoices for the services and costs to Defendant. True and correct copies of the invoices are attached hereto as Exhibit C.

12.     Defendant failed to pay the invoices when due.

13.     Accordingly, in or about September 2021, Big Dog terminated the Sales Agreement.

14.     Despite Defendant's obligation to pay all sums due and owing upon termination, Defendants have not paid the invoices and an amount totaling $92,424.50 remains outstanding.

**LEGAL CLAIMS**

**COUNT I — BREACH OF CONTRACT**

15.     Big Dog incorporates and re-alleges paragraphs 1-14 of the Complaint as if fully set forth herein.

16.     Big Dog and Defendant entered into a Sales Agreement, whereby Defendant agreed to pay monthly invoices in full within thirty (30) days of the date of the invoice. *See* Exhibit A.

17.     Big Dog and Defendant entered into Services Agreement, whereby Big Dog agreed to arrange for and/or perform various Services and Defendant agreed to pay for such Services. *See* Exhibit B.

3

18.     Big Dog performed under the Sales Agreement and Services Agreement and sent invoices to Defendant. *See* Exhibit C.

19.     Defendant breached the Sales Agreement and Service Agreement by failing to pay the invoices.

20.     As a direct and proximate result of Defendant's breaches of the Sales Agreement and Service Agreement, Big Dog has sustained, and Defendant is liable for, the outstanding balance of the unpaid invoices.

WHEREFORE, Big Dog respectfully requests that this honorable Court enter an Order: (i) declaring the termination of the Sales Agreement; (ii) awarding monetary damages for the outstanding balance of the unpaid Invoices; and (ii) providing such other legal and equitable relief as this Court may deem just and proper.

Dated:  November 10, 2022                      Respectfully Submitted,


                                               Thomas C. Ryan (Pa. ID 92482)
                                               Amanda R. Cashman (Pa. ID 306843)
                                               Ryan W. Steyer (Pa. ID 328009)
                                               K&L Gates LLP
                                               K&L Gates Center
                                               210 Sixth Avenue
                                               Pittsburgh, Pennsylvania 15222
                                               Tel:    (412) 355-6500
                                               Fax:    (412) 355-6501
                                               thomas.ryan@klgates.com
                                               amanda.cashman@klgates.com
                                               ryan.steyer@klgates.com

                                               *Attorneys for Plaintiff Big Dog Energy, LLC*

### **VERIFICATION**

I, Matt Anderson, owner of Big Dog Energy, LLC, hereby certify that the facts contained in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.  I understand that the statements therein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Date: November 10, 2022

DocuSigned by:

E7CA385668D24ED...

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the United Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Ryan W. Steyer (Pa. ID 328009)

# EXHIBIT A

## SALES AGREEMENT

This Sales Agreement (the "**Agreement**") is entered into as of __July 21 2021__ (the "**Effective Date**"), by and between Big Dog Energy, LLC ("Seller") and EZ Blockchain, LLC ("Buyer") (each a "Party" and collectively the "Parties")

WHEREAS, Seller is the owner and operator of certain natural gas wells located Clearfield County, Pennsylvania known as the Haggerty Well.

WHEREAS, Seller is the producer of natural gas by the wells located at Clearfield County, Pennsylvania known as the Haggerty Well.

WHEREAS, Seller desires to sell and Buyer desires to buy the aforementioned natural gas in the quantity and on the terms set forth below.

WHEREAS, Buyer intends to install and maintain Buyer's Equipment (defined below) at the well site to generate power in connection with its equipment.

WHEREAS, the Parties desire to set forth their rights and obligations with respect to one another in this Agreement.

NOW THEREFORE, for the mutual promises and covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows.

1.   **Sale of Goods.**  Subject to the terms of this agreement, Seller shall make available for sale and Buyer shall purchase natural gas produced from the natural gas well owned and operated by Seller in Clearfield County, Pennsylvania, known as the Haggerty Well (the "**Goods**") in the volumes set forth in paragraph 5 below.  Seller represents and warrants that it has the right and authority to furnish and sell the Goods on the terms set forth herein.

2.   **Access.**  During the Term, Seller shall provide space sufficient for Buyer to install and maintain its mobile data centers and power generators, including but not limited to gas electric generators, gas electric turbines, storage units, mobile offices, trailers, trucks, transformers (each and collectively "Buyer's Equipment") at the well site. Buyer shall be solely responsible for constructing, installing, maintaining and operating Buyer's Equipment. Seller shall solely be obligated to provide Buyer with access to its well site and shall not be otherwise responsible for the installation, maintenance, and/or operation of Buyer's Equipment as permitted by this agreement. Seller shall not be responsible to make any other adjustments and/or alterations to it well site other than to provide for Buyer's access as outlined in this Paragraph 2.  Seller does not now, nor will it acquire by virtue of this Agreement or performance hereunder, any right, title, or interest in Buyer's Equipment.

3.   **Delivery.**  Seller shall deliver the Goods to Buyer at the gas generator flange at the metering site ("Delivery Point").  Buyer shall connect the well at the delivery point into Buyer's system through the metering site. Buyer shall bear the entire cost of the connection at the delivery point, including the cost of any necessary repairs and/or periodic maintenance and Seller shall reasonably cooperate with Buyer to allow for such connection. Upon delivery at the delivery point, the Goods shall be deemed accepted by the Buyer.

4.   **Purchase Price & Payments.**  Seller agrees to sell the Goods to Buyer for the price set forth in the fee schedule attached hereto in Exhibit A and Seller will meter gas sales delivered to the Delivery Point and provide an invoice to Buyer on a monthly basis.  All invoices must be paid, in full, within thirty (30) days of the date of invoice. Any balances not paid within thirty (30) days will be subject to a five percent (5%) late payment penalty.

5. **Gas Quality/Quantity.** Seller makes no warranty as to the actual deliverable volume, quantity or quality of gas contained within the reservoir and sold to Buyer. Buyer agrees that it shall be independently responsible to ensure that the gas quality from the well is sufficient for its purposes and Seller shall reasonably cooperate with Buyer in efforts to ensure such quality both prior to and after delivery. Subject to the terms of this agreement, Seller shall deliver the Goods required by Buyer to the Delivery Point beginning no later than such earliest date as may be accomplished following installation of Buyer's Equipment and necessary metering

equipment, according to the following schedule:

Stage 1 – 250 MCF per day for the first three (3) months after installation of Buyer's Equipment;
Stage 2 – 500 MCF per day for three (3) to six (6) months after installation of Buyer's Equipment; and
Stage 3 – 2,000 MCF per day beginning six (6) months after installation of Buyer's Equipment.

**6.    Gas Interruption.** Seller retains the unilateral right to immediately interrupt the gas production from its well as determined by Seller to be necessary due to an operational safety or service-related issue, using Seller's commercially reasonable discretion. To the extent possible, Seller agrees to provide Buyer with advance notice of any repairs, changes, or any other conditions that may result in any interruption of delivery of the Goods to Buyer at the delivery point. If any gas interruption is caused by an emergency event, Seller shall notify Buyer as quickly as reasonably possible. In the event that the condition causing gas interruption shall continue for a period of more than thirty (30) consecutive days, Buyer or Seller shall have the option to terminate this agreement immediately and neither party shall have any further liability to the other under this agreement nor shall there be any liability for conditions occurring and/or resulting from the gas interruption.

**7.    Shut-In / Discontinuance.** Seller retains the unilateral right to immediately shut-in the well and/or discontinue delivery of the Goods as determined by Seller to be necessary due to an operational safety or service-related issue, using Seller's commercially reasonable discretion. To the extent possible, Seller agrees to provide Buyer with advance notice of the shut-in and/or discontinuance. If the shut-in and/or discontinuance is caused by an emergency event, Seller shall notify Buyer as quickly as reasonably possible. Upon notification of the shut-in and/or discontinuance, this agreement shall terminate immediately and neither party shall have any further liability to the other under this agreement nor shall there be any liability for conditions occurring and/or resulting from the shut-in and/or discontinuance.

**8.    Risk of Loss.** Risk of loss will remain with the Seller until the time when the Buyer accepts delivery at the Delivery Point, at which time sole risk of loss shall transfer to the Buyer.

**9.    Title.** Title to the Goods will remain with the Seller until Buyer accepts delivery at the delivery point. Seller shall maintain the right to utilize the gas (other than the delivered Goods) for its own purposes, including power generation for onsite use or the right to enter into similar gas sales agreements or any other business-related agreement with one or more third parties, provided that such arrangement does not reduce the volume of Goods delivered to Buyer.

**10.    Taxes.** Seller shall pay or cause to be paid all taxes, fees, levies, penalties, licenses or charges imposed by any government authority ("Taxes") on or with respect to the Goods prior to the Delivery Point and all Taxes at the Delivery Point, except to the extent any Taxes imposed upon Seller are attributable to or arising out of Buyer's operation(s). For the avoidance of doubt, Seller is responsible for any impact fee(s) and any severance taxes associated with the Goods, Seller's operations (including extraction of natural gas) and/or the well. If any Taxes are imposed upon Seller that are attributable to or arise out of Buyer's operation(s), then Buyer shall be solely responsible for payment of any such Taxes. Buyer shall pay or cause to be paid all Taxes on or with respect to the Goods after the Delivery Point. If a party is required to remit or pay Taxes that are the other party's responsibility hereunder, the party responsible for such Taxes shall promptly reimburse the other party for such Taxes. Any party entitled to an exemption from any such Taxes or charges shall furnish the other party any necessary documentation thereof upon request.  Notwithstanding the foregoing, neither Party shall have any obligation to pay or reimburse the other for any income taxes, nor shall Buyer have any obligation to pay any property or *ad valorem* taxes attributable to the land, subsidence rights, or the well.

**11.    Term and Termination.** The term of this Agreement is three (3) years ("Term"), subject to automatic extensions for one (1) year terms until terminated in accordance with this paragraph and paragraphs 6 & 7. Either party may terminate this agreement at any time upon ninety (90) days written notice to the other party. Either party shall have the right to terminate this agreement by providing not less than thirty (30) days written notice to the other party in the event that such other party materially breaches its obligations under this agreement and fails to substantially cure such breach within such thirty (30) day period.  Upon termination, Buyer shall pay all sums due and owing under this Agreement for Goods delivered through the date of termination and shall have no further payment obligations hereunder.

**12.  Disclaimer of Warranties.** EXCEPT AS OTHERWISE PROVIDED HEREIN, THE GOODS ARE SOLD

'AS IS' AND SELLER EXPRESSLY DISCLAIMS ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF MERCHANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE.

**Limitation of Liability.** UNDER NO CIRCUMSTANCES SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY OR ANY THIRD PARTY FOR ANY SPECIAL, EXEMPLARY, INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES IN CONNECTION WITH THIS AGREEMENT SUCH AS, BUT NOT LIMITED TO, BUSINESS INTERRUPTION, LOSS OF REVENUE OR ANTICIPATED PROFIT OR LOST BUSINESS, COSTS OF DELAY OR FAILURE OF DELIVERY.

13.   **Severability.** In the event any provision of this Agreement is deemed invalid or unenforceable, in whole or in part, that part shall be severed from the remainder of the Agreement and all other provisions should continue in full force and effect as valid and enforceable.

14.   **Waiver.** The failure by either party to exercise any right, power or privilege under the terms of this Agreement will not be construed as a waiver of any subsequent or further exercise of that right, power or privilege or the exercise of any other right, power or privilege.

15.   **Legal and Binding Agreement.** This Agreement is legal and binding between the Parties as stated above. The Parties each represent that they have the authority to enter into this Agreement and that entering into this Agreement will not breach any legal obligation of such Party.

16.   **Governing Law and Jurisdiction.** The Parties agree that this Agreement shall be governed by the laws of the Commonwealth of Pennsylvania without regard for its conflict of laws rules.

17.   **Entire Agreement.** The Parties acknowledge and agree that this Agreement represents the entire agreement between the Parties. In the event that the Parties desire to change, add, or otherwise modify any terms, they shall do so in writing to be signed by both parties. Neither Party is relying on any statement, representation, promise, or agreement other than those referenced herein.

18.   **Indemnification.** Buyer agrees to hold harmless, release, defend, and indemnify Seller and its owners, managers, directors, officers, employees, agents, representatives, contractors, successors and assigns, from and against all claims, demands, suits, actions, debts, accounts, damages, costs, losses, penalties, violations, liabilities, judgments, and expenses (including reasonable attorneys' fees, expert fees and other costs of litigation) relating to or arising from or out of Buyer's actions under this agreement and/or Buyer's operations on the well site, whether or not arising from any alleged negligence, including but not limited to claims for personal injury, property damage, or claims brought by regulatory bodies (including the Pennsylvania Department of Environmental Protection), except to the extent caused by the willful misconduct of the Seller. This obligation shall survive termination of this agreement.

19.   **Insurance.** Each party shall maintain throughout the Term General and/or Excess Liability insurance with industry standard limits and coverages adequate and appropriate for activities contemplated by this agreement, including any indemnification obligations. Buyer shall include Seller as an additional insured on its insurance policy. Upon request, a memorandum or certificate of insurance shall be provided from Buyer to Seller, which shall confirm that the insurance is in full force and effect with the appropriate coverage limits.

20.   **Governmental Regulation.** If at some future date there is a change in any tax, law, rule, or regulation, and as a result of such change, a governmental certificate, permit, and/or approval is required, or either party is otherwise prevented or prohibited from carrying out its obligations under this agreement based upon a governmental regulation, then this agreement may be immediately terminated upon written notice by the affected party to the other party. Neither party shall have any further liability to the other under this agreement nor shall there be any liability for conditions occurring and/or resulting from governmental regulation. Buyer and Seller covenant and agree that it will not pursue any action or assert any claim against the other through any governmental agency.

21.   **Force Majeure.** No failure or delay in performance, whether in whole or in part, by Buyer or Seller shall be deemed to be a breach (other than the obligation to pay amounts when due under this agreement) when such failure or delay is occasioned by or due to a Force Majeure Event. The part affected by a Force Majeure Event shall give

written notice to the other party as soon as reasonably possible of the Force Majeure Event and its expected duration. Force Majeure Event, as used herein, shall mean acts of God, vandalism, wars, civil unrest, rebellion, blockades, strikes, weather, fires, explosions, changes in laws and/or regulations, pandemics or epidemics, breakage of machinery or pipelines, failure or freezing of wells or pipelines, failure of third-parties, and other causes not within the control of the party claiming Force Majeure. The affected party will use all commercially reasonable efforts to remedy each Force Majeure Event and resume full performance under this agreement as soon as reasonably practicable. If a Force Majeure Event persists for more than thirty days or if a party's performance is delayed for more than thirty days than the performing party may terminate this Agreement, effective immediately.

22.   **Confidentiality.** Seller shall keep all data, information and affairs of Buyer, including the existence of this Agreement, revealed to Seller in connection with or related to this Agreement or performance hereunder ("Confidential Information") strictly confidential and shall not disclose Confidential Information to any third-party except as set forth in this section. Seller shall use the Confidential Information solely to perform its obligations hereunder and for no other purpose whatsoever. Seller may disclose Confidential Information to those of its directors, officers, contractors, and employees who have a need to know the information in order to perform Seller's obligations hereunder on the condition that i) each person to whom Confidential Information is disclosed is legally required to protect it on such terms at least as stringent as those herein and ii) Seller shall be responsible for any act or omissions of such person with respect to Confidential Information as if such act or omission were undertaken by Seller. Nothing herein prohibits Seller from disclosing Confidential Information to the extent such disclosure is required by law. Given the unique nature of the Confidential Information, monetary damages may be inadequate to compensate Buyer or otherwise may be difficult to ascertain. Therefore, Seller shall be entitled to obtain injunctive relief to prevent or redress any actual or threatened breach of this section, without being required to post bond or other security.

23.   **Independent Contractors.** The relationship of the Parties is that of independent contractors. Neither Party has the power or authority to bind the other and no agency relationship, employment, partnership, or joint venture is intended or created by this Agreement or performance hereunder.

24.   **No Third-Party Beneficiaries.** This Agreement is for the sole benefit of the Parties hereto and their respective successors and permitted assigns and nothing herein, express of implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

The Parties agree to the terms and conditions set forth above as demonstrated by their signatures as follows:

**[signature page to follow]**

Seller: **Big Dog Energy, LLC**

By: _____

Name: **Matthew Anderson**

Title: **Member**

Date: **7-12-2021**

Buyer: EZ Blockchain, LLC

By: *Sergii Gerasymovych*

Name: Sergii Gerasymovych

Title: CEO and Co-Founder

Date: 07/12/2021

## EXHIBIT A

**FEE SCHEDULE**

| Price | Volume |
|---|---|
| $1.00 per thousand cubic feet (MCF) | 1-2,000 MCF per day |

# EXHIBIT B

| | |
|---|---|
| **From:** | Matthew Anderson |
| **To:** | Ryan, Thomas C.; Steyer, Ryan W. |
| **Subject:** | Fwd: Today's Conversation |
| **Date:** | Tuesday, October 11, 2022 7:05:32 PM |

**External Sender:**

Matt Anderson
Big Dog Energy
724-856-1896
Matt@BDEnergyllc.com

Begin forwarded message:

> **From:** Matthew Anderson <matt@bdenergyllc.com>
> **Date:** July 21, 2021 at 17:32:58 EDT
> **To:** Krimildo Lane <krimildo.lane@ezblockchain.net>, Sergii Gerasymovych
> <sergii@ezblockchain.net>, Vlad Rodinoff <vr@ezblockchain.net>,
> nick@zrmcontracting.com, zack@zrmcontracting.com, Travis Shaffer
> <shafferweldingco@gmail.com>
> **Subject: Today's Conversation**

Guys,

Per my conversation with Krim today. If EZ Blockchain can give us addresses to pick up all of their equipment I will cover all expenses for EZ Blockchain at this time and bill you back later for work performed by ZRM on your behalf. We will set up the equipment and notify you when it's ready so you can set up your miners. Sergii and Vlad please advise and we will get this done within the next week.

**Thanks,**
**Matt Anderson**

Big Dog Energy, LLC
850 Gramac Lane
Pittsburgh, Pa 15235
724-856-1896

# EXHIBIT C

| | |
|---|---|
| Environmental Compression Services, Inc | 2,338.75 |
| Altoona Crane & Rigging Inc | 4,325.00 |
| Altoona Crane & Rigging Inc | 5,900.00 |
| Altoona Crane & Rigging Inc | 1,248.50 |
| GW Ridge LLC | 72,670.75 |
| WTC Gas Field Service | 5,941.50 |
| | $92,424.50 |

Environmental Compression Services, Inc.

# Invoice

33 Spruce Lane
Burgettstown, PA 15021

| Date | Invoice # |
|------|-----------|
| 1/11/2022 | WMM601851 |

**Bill To**

EZ Blockchain
Sergii Gerasymovych
311 S. Wacker Drive
Suite 1410
Chicago, IL 60606

| P.O. No. | Terms | Project |
|----------|-------|---------|
| Verbal | Due on receipt | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 3.5 | Assist in gathering information in regards to air permitting of a natural gas well pad used for power generation | 125.00 | 437.50 |
| 4.75 | Phone calls, faxes, e-mails to state and federal agencies for information and clarification. | 125.00 | 593.75 |
| 3.25 | Meetings with customers, associates, contractors and state/federal agencies - January 6, 2022 | 125.00 | 406.25 |
| 6 | Driving to and from meetings, sites and agencies - January 6, 2022 | 95.00 | 570.00 |
| 265 | Mileage reimbursement - January 6, 2022 | 1.25 | 331.25 |
| | Hegarty A Well Pad Generator Station - Working with PADEP - Air Quality | | |

We appreciate your prompt payment.

| E-mail |
|--------|
| bmonroe@atc-pa.com |

**Total** $2,338.75

**ALTOONA CRANE & RIGGING, INC**

an affiliate of Bryce Saylor & Sons, Inc and Saylor Bros, Inc.

4235 Sixth Avenue
ALTOONA, PA 16602

*ENTERED*

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/14/2021 | 9900 |

| Bill To |
|---------|
| E Z BLOCKCHAIN<br>833 WEST CHICAGO AVENUE<br>CHICAGO, ILL  68642 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
|  | Upon Receipt |  |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
|  | 09/10/2021 – CRANE SERVICE TO SWITCH TWO ELECTRIC CONTAINERS ON PADS AT DILLON ROAD, COALPORT, PA: (OUR JOB INV. # 2541) | 0.00 | 0.00T |
|  | 110 TON CRANE - MOB IN FEE | 500.00 | 500.00T |
|  | 110 TON CRANE SERVICE - 8 HR. MIN. | 2,500.00 | 2,500.00T |
|  | 110 TON CRANE - MOB OUT FEE | 500.00 | 500.00T |
|  | 2 RIGGERS, 5 HRS. EA. @ $ 65.00 PH | 650.00 | 650.00T |
|  | PICK UP TRUCK - 5 HRS. @ $ 35.00 PH | 175.00 | 175.00T |
|  |  |  | 0.00 |
|  | PA Sales tax - "exempt" |  | 0.00 |
|  | PA Sales tax due |  |  |

| Finance Charge of 2% per month, 24% per annum | **Total** | $4,325.00 |
|-----------------------------------------------|-----------|-----------|

**ALTOONA CRANE & RIGGING, INC**

an affiliate of Bryce Saylor & Sons, Inc and Saylor Bros, Inc.

4235 Sixth Avenue
ALTOONA, PA 16602



# Invoice

| Date | Invoice # |
|------|-----------|
| 9/14/2021 | 9901 |

| Bill To |
|---------|
| E Z BLOCKCHAIN<br>833 WEST CHICAGO AVENUE<br>CHICAGO, ILL  68642 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
| | Upon Receipt | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| | 09/09/2021 – CRANE SERVICE TO UNLOAD 3 CAT GEN CONTAINERS ONTO WOOD PAD & SET 2 OTHER CONTAINERS ONTO PAD AT DILLON ROAD, COALPORT, PA: (OUR JOB INV. # 2539) | 0.00 | 0.00T |
| | 140 TON CRANE - MOB IN FEE | 800.00 | 800.00T |
| | 140 TON CRANE SERVICE - 8 HR. MIN. | 3,500.00 | 3,500.00T |
| | 140 TON CRANE - MOB OUT FEE | 800.00 | 800.00T |
| | RIGGING TRUCK - 8 HRS. @ $ 35.00 PH | 280.00 | 280.00T |
| | RIGGER - 8 HRS. @ $ 65.00 PH | 520.00 | 520.00T |
| | | | 0.00 |
| | PA Sales tax – "exempt" | | 0.00T |
| | PA Sales tax due | | 0.00 |

| Finance Charge of 2% per month, 24% per annum | **Total** | $5,900.00 |
|-----------------------------------------------|-----------|-----------|

**ALTOONA CRANE & RIGGING, INC**

an affiliate of Bryce Saylor & Sons, Inc and Saylor Bros, Inc.

4235 Sixth Avenue
ALTOONA, PA 16602

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/9/2021 | 9891 |

| Bill To |
|---------|
| E Z BLOCKCHAIN<br>833 WEST CHICAGO AVENUE<br>CHICAGO, ILL  68642 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
| | Upon Receipt | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| | 09/03/2021 - LABOR TO CUT VENTILATION AT COALPORT, PA (OUR JOB INV. #2535) | 0.00 | 0.00T |
| | 2 MEN - 8 HRS. EA. @ $ 65.00 PH + .5 HR. EA. O.T. @ $ 95.00 PH | 1,135.00 | 1,135.00T |
| | 10% INS/FUEL SURCHARGE | 113.50 | 113.50T |
| | PA Sales tax - "exempt" | | 0.00T |
| | PA Sales tax due | | 0.00 |

| Finance Charge of 2% per month, 24% per annum | **Total** | $1,248.50 |
|---|---|---|

FORM107347-1112
00100628

**PNC BANK**
PNC Bank, National Association
Pittsburgh, Pennsylvania

CASHIER'S CHECK

o. 8038247                    8-9/430

DATE SEPT. 21, 2021

PAY TO THE
ORDER OF  G W RIDGE, LLC                                    $  72,670.75

SEVENTY TWO THOUSAND SIX HUNDRED SEVENTY AND 75 / 100******* DOLLARS

SANDY ENERGY LP
                                        REMITTER

PNC Bank, National Association

OFFICIAL SIGNATURE

FSC
MIX
Paper from
responsible sources
FSC® C101537

REDACTED

---

**PNC BANK**

001
PINE TOWNSHIP (628)
11970 PERRY HIGHWAY
WEXFORD, PA, 15090
Cashbox 02

Business Date                SEP 21, 2021
Calendar Date                SEP 21, 2021

Purchase                          14:00
Transaction Number               00213
Account Type             Official Check
Account Number              XXXXXXXXX
Document Number               8038247
Transaction Amount    $      72,670.75
Funded by Check       $      72,670.75

Payee:
G W RIDGE, LLC
Remitter:
SANDY ENERGY LP

This deposit or payment is accepted subject to
verification and to the rules and regulations of
this bank. Deposits may not be available for
immediate withdrawal. Receipt should be held
until verified with your statement.

FOR MORE INFORMATION AND EXAMPLES OF WHEN
DEPOSITS BECOME AVAILABLE, GO TO
WWW.PNC.COM/BANKWISELY

**PNC BANK**

001
PINE TOWNSHIP (628)
11970 PERRY HIGHWAY
WEXFORD, PA, 15090
Cashbox 02

Business Date                SEP 21, 2021
Calendar Date                SEP 21, 2021

Purchase                          14:00
Transaction Number               00213
Account Type             Official Check
Account Number              XXXXXXXXX
Document Number               8038247
Transaction Amount    $      72,670.75
Funded by Check       $      72,670.75

Payee:
G W RIDGE, LLC
Remitter:
SANDY ENERGY LP

This deposit or payment is accepted subject to
verification and to the rules and regulations of
this bank. Deposits may not be available for
immediate withdrawal. Receipt should be held
until verified with your statement.

FOR MORE INFORMATION AND EXAMPLES OF WHEN
DEPOSITS BECOME AVAILABLE, GO TO
WWW.PNC.COM/BANKWISELY

# WTC Gas Field Services, Inc.

**Equipment**
Dozers
Excavator
Dump Trucks
Winch Trucks
Vacuum Trucks
Frac Tanks
High Pressure Pump Truck
Boom Mower
Mulcher

Owner - Neal Watkins
Contact - Rusty Davis

**Service Area**
Pennsylvania, New York, Ohio, West Virginia

**Services**
Hotshots
White Water Treatment
Set Pump Jacks
Pipe Hauling
Rig Moves
Frac Tank Rental
Water Hauling
Blowtank Rental
Location/Road Construction

Phone   724 349-4045
Fax      724 254-2490

Pind

**Submit Payment to:**

WTC Gas Field Services, Inc.
Watkins Trucking
16893 State Route 403 North
Clymer, PA 15728

**Bill to:**   Big Dog Energy
104 Bradford Road
Wexford, Pa 15090

Invoice #

001

**Total Amount Due**

$5,941.50

**Invoice Date**

12/9/2021

Page
1